Filed 6/13/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ISABEL SILVA et al., | B337435 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 23STCV19513) |
| v. | |
| CROSS COUNTRY HEALTHCARE, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge.  Affirmed.

Proskauer Rose, Steven J. Pearlman, Jonathan P. Slowik, and Laura L. Vaughn for Defendants and Appellants.

Law Office of Donald Potter and Donald Potter for Plaintiffs and Respondents.

\* \* \* \* \* \*

Under California law, an adhesive agreement to arbitrate is unconscionable, and therefore unenforceable, if it "compels arbitration of the claims more likely to be brought by . . . the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by . . . the stronger party" (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 497 (*Ramirez*)) and if it obligates the weaker party to consent to the entry of an injunction in the stronger party's favor as well as to waive the statutory bond requirement for such an injunction (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 451 (*Lange*); *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 234 (*Carbajal*)). Can an employer (as the stronger party) sidestep this precedent by requiring its employees (as the weaker party) to simultaneously execute *two* contracts—one that purports to require arbitration of all claims on equal terms, and a second that supersedes the first contract and has terms favoring the employer—if those two contracts, when read together, render the first contract unconscionable? *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 491 (*Alberto*) held that the answer is "no." We agree with *Alberto*, and publish to reject the further defenses raised by the employer in this case to what we view as an indefensible end-run around precedent. We accordingly affirm the trial court's order finding the employer's arbitration agreement unenforceable and denying the employer's motion to compel arbitration.

2

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The parties*

Cross Country Staffing, Inc. is a "comprehensive health care staffing company" that "recruits and places healthcare professionals in virtually every specialty and area of experience in hospitals globally."

Isabel Silva, Alejandro Garcia, and Janai Velasco (collectively, plaintiffs) are all former or current employees of Cross Country Staffing.

#### B. *The two agreements*

At the time plaintiffs started their employment with Cross Country Staffing, each signed the same two contracts—namely, (1) an "Arbitration Agreement"[1] and (2) an "Employment Agreement."

##### 1. *Arbitration Agreement*

In the Arbitration Agreement, the newly hired employee and Cross Country Staffing "agree that binding arbitration shall be the exclusive means of resolving all claims between them, whether or not arising out of or in any way related to [the employee's] employment with [Cross Country Staffing] or the termination thereof." Claims "covered" by the agreement reach "violation[s] of any . . . federal, state or local statute, ordinance or

---

[1] Although plaintiffs have denied signing the Arbitration Agreement, Cross Country Staffing produced electronically signed copies of each agreement. The trial court did not resolve this factual dispute, and the parties do not pursue this issue on appeal.

3

regulation or constitutional, contract, tort or common law theory."[2]

As to claims falling within the ambit of the Arbitration Agreement:

— Both the employee and Cross Country Staffing "waive[] the right to bring, maintain, participate in, or receive money from, any class, collective, or representative proceeding, whether in arbitration or otherwise, except to the limited extent permitted under the . . . Private Attorney General's Act [(PAGA) (Lab. Code, § 2698 et seq.)]."

— Both the employee and Cross Country Staffing "shall pay [their] own costs and attorney fees" unless the arbitrator rules otherwise in accordance with "the applicable law" for prevailing party fees and costs awards. Cross Country Staffing is "responsible for any arbitration fees and/or costs that would not normally be incurred if the action were brought in a court of law."

The Arbitration Agreement provides that it "can be modified only in a writing signed by" the employee and a Cross Country Staffing attorney. It also contains a severance clause.

The Arbitration Agreement "is governed by and enforceable under the [Federal Arbitration Act (FAA) (9 U.S.C. 1 et seq.)]."

2. *Employment Agreement*

The Employment Agreement "define[s] the duties and responsibilities of" Cross Country Staffing and the employee as

---

[2] The Arbitration Agreement excludes from arbitration claims "for unemployment, workers' compensation, or state disability insurance benefits; claims under an employee benefit plan, the terms of which contain its own arbitration or claims review procedure; and claims which parties are legally prohibited from submitting to arbitration."

4

well as sets "the terms and conditions" of employment.[3]  The Employment Agreement specifies that employment is "at will," and addresses a variety of topics including the employee's duty of loyalty, assignment of the employee's intellectual property rights, limitations on the receipt of gifts, the use of company property, and a prohibition on receiving kickbacks.

Two of the terms and conditions of employment are especially pertinent to this appeal.  First, the Employment Agreement prohibits the employee from "directly or indirectly[] us[ing] or disclos[ing]" any "[c]onfidential [i]nformation," which the agreement defines as reaching beyond "the legal definition of a trade secret" and encompassing, among other things, Cross Country Staffing's "personnel and payroll records and employee lists."  Second, the Employment Agreement, as an extension of the duty of loyalty owed by the employee, (1) prohibits the employee from working for anyone else while employed for Cross Country Staffing; (2) prohibits the employee, during employment and for 12 months after termination, from "solicit[ing], seek[ing] to employ, or seek[ing] to retain" anyone "providing services" to Cross Country Staffing, from persuading or attempting to persuade any such person to stop providing services to Cross Country Staffing, and from "us[ing] [Cross Country Staffing's] trade secret information"; and (3) requires the employee for a period of 12 months after termination of employment, to "promptly inform [Cross Country Staffing] in writing of any employment or other business affiliations that [the employee] has

---

[3]  While the Employment Agreement declares this stated purpose, it nowhere defines any duty owed by Cross Country Staffing beyond "extend[ing] an offer of at-will employment."

5

with" any other business "in competition" with Cross Country Staffing.

With respect to these particular provisions limiting the use of confidential information and prohibiting competition and solicitation, the Employment Agreement further specifies that:

— The employee "acknowledges *and agrees*" that these limits and prohibitions "are necessary to protect the propriety and related interests of" Cross Country Staffing, "are reasonable with respect to duration and scope of activities," and "do not impose a greater restraint than is necessary to protect the Confidential Information, goodwill, and other business interests" of Cross Country Staffing.  (Italics added.)

— The employee "acknowledges *and agrees* that any breach" of these particular provisions "will cause irreparable harm to [Cross Country Staffing], for which a remedy in the form of damages will not be adequate or otherwise ascertainable." (Italics added.)

— The employee "*agrees* that [Cross Country Staffing] will be entitled to temporary, preliminary and permanent injunctive relief against [the employee]" for a breach.  (Italics added.)

— The employee "*agrees*" that Cross Country Staffing is entitled to this injunctive relief "without having to post bond." (Italics added.)

The Employment Agreement provides that "[a]ll suits, proceedings and other actions relating to, arising out of or in connection with [the Employment Agreement] will be" litigated in federal court in Los Angeles or state court in Los Angeles if Cross Country Staffing "so chooses" or if the federal court "lacks jurisdiction."  The employee also "waives any claims against or

6

objections to . . . jurisdiction and venue." And if Cross Country Staffing "is successful in whole or in part in any legal or equitable action to defend its right under or to enforce any terms of [the Employment Agreement], [it] shall be entitled to payment of all costs, expenses, and reasonable attorney fees associated with such action[] from [the employee]."[4]

Critically, the Employment Agreement specifies that it "constitutes the entire understanding and agreement of [the employee] and [Cross Country Staffing] with respect to the subject matter of th[e] Agreement, and *supersedes all prior and contemporaneous agreements* or understandings, inducements or conditions, express or implied, written or oral, between [Cross Country Staffing] and [the employee]." (Italics added.) It also contains a severance clause.

## II. Procedural Background

### A. *The pleadings*

On August 15, 2023, Silva and Garcia sued Cross Country Staffing and its parent company, Cross Country Healthcare, Inc. (collectively, Cross Country Staffing, unless otherwise noted).[5] In the operative first amended complaint, Velasco joined as a

---

[4] The Employment Agreement separately provides that Cross Country Staffing is entitled to attorney fees, as well as other reimbursement, from the employee if the employee is subject to another company's non-compete provisions and if that other company sues Cross Country Staffing.

[5] Plaintiffs also sued Workforce Solutions Group, Inc., whose assets were acquired by Cross Country Healthcare, Inc. in June 2021. This entity is not a party to either of the agreements at issue and is not a party to the arbitration ruling on appeal.

7

plaintiff.[6]  In that complaint, plaintiffs allege putative class and representative claims for (1) failure to pay wages (in violation of Labor Code sections 204, 510, 1182.12, 1194, 1194.2, 1197, 1197.1, and 1198), (2) failure to provide meal periods (in violation of Labor Code sections 512 and 226.7), (3) failure to provide rest periods (in violation of Labor Code section 226.7), (4) failure to reimburse business expenses (in violation of Labor Code section 2802), (5) failure to provide accurate itemized wage statements (in violation of Labor Code section 226), (6) waiting time penalties (under Labor Code sections 201 through 203), (7) unfair competition (under Business and Professions Code section 17200), and (8) violations of PAGA (under Labor Code section 2698 et seq.).

### B.  *The motion to compel*

On December 20, 2023, Cross Country Staffing filed a motion to compel arbitration.  In its moving papers, Cross Country Staffing included only the Arbitration Agreement; it did not include, or make any mention of, the Employment Agreement.  Plaintiffs opposed the motion, arguing that the Arbitration Agreement must be read together with the Employment Agreement, and that the Arbitration Agreement when read with the Employment Agreement was unconscionable and hence unenforceable in its entirety.[7]

---

[6]     Monica Cano was also added as a plaintiff, but she was hired by Workforce Solutions Group, Inc., did not work for Cross Country Staffing after the acquisition, is not a party to either agreement at issue, and thus is not a party to the arbitration ruling on appeal.

[7]     The parties also litigated whether Cross Country Healthcare, Inc.—a nonparty to the Arbitration Agreement—

After receiving a reply and conducting a hearing, the trial court issued a 10-page order denying Cross Country Staffing's motion to compel arbitration. First, the court ruled that it would read the Arbitration Agreement in light of the Employment Agreement because "both [were] executed on a single day as part of the employee's hiring, and [because] both . . . govern dispute resolution as part of the overall employment relationship." The court found the recent holding in *Alberto, supra,* 91 Cal.App.5th 482, to be "directly on point and control[ling]" on that issue. Second, the trial court ruled that the adhesive nature of the agreements resulted in "at least a low degree of procedural unconscionability" and that the Arbitration Agreement is "substantively unconscionable" in light of three aspects of the Employment Agreement—namely, (1) the "non-mutual[ity]" of the two agreements because they grant Cross Country Staffing the "right[] to court access" "for the types of claims an employer might be expected to have against an employee" while "requir[ing] [e]mployee [p]laintiffs to arbitrate all of their claims," and that the "unfair[ness]" of this nonmutuality is "further aggravated by the fact that only [Cross Country Staffing] . . . is entitled to recover all costs, including attorney's fees, for those claims that the employer is likely to bring against the employee"; (2) the employee's "agree[ment]" that any breach of the confidentiality, non-compete and non-solicitation provisions "will cause irreparable harm," that such breaches "entitle[]" Cross Country Staffing to injunctive relief, and that no bond is required; and (3) the prohibition against an employee disclosing her own salary, which violates Labor Code section 232. Third,

could enforce a right to arbitrate. The trial court did not resolve this dispute, and the parties do not pursue this issue on appeal.

9

the trial court ruled that severance of the unconscionable provisions was "improper" because there are "multiple offending provisions" and the Arbitration Agreement, when read with the Employment Agreement, was "permeated by an unlawful purpose" of "forc[ing] employees to arbitrate their claims while allowing the employer the freedom to seek relief in a court of law, including attorney's fees and costs, for those claims most likely to be brought by the employer." Because the unconscionability rendered the entire Arbitration Agreement unenforceable, the court denied Cross Country Staffing's motion to compel arbitration.

### C.    *The appeal*

Cross Country Staffing filed this timely appeal.

## DISCUSSION

Cross Country Staffing challenges the trial court's order denying its motion to compel arbitration. Our review entails three questions: (1) Did the trial court correctly construe the Arbitration Agreement together with the Employment Agreement; if so, (2) did the trial court correctly conclude that the Arbitration Agreement is unconscionable; and if so, (3) did the trial court abuse its discretion in declining to sever the unconscionable terms and, instead, in declaring the Arbitration Agreement unenforceable?

## I.    Propriety of Construing the Arbitration Agreement Together with the Employment Agreement

Civil Code section 1642 provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken

together." (Civ. Code, § 1642;[8] *Chern v. Bank of America* (1976) 15 Cal.3d 866, 874.) This statute codifies a broader "'common law principle[]'" to the same effect (*Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1320 (*Holguin*); *Cadigan v. American Trust Co.* (1955) 131 Cal.App.2d 780, 787), and serves as a tool for "ascertaining the intention of the parties" when their intent is "otherwise doubtful" (§ 1637; *Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 694 (*Ahern*); *Waters v. Waters* (1961) 197 Cal.App.2d 1, 5 [this principle is used "in arriving at the total understanding of the contracting parties"]).[9] Sometimes, the parties explicitly state their intent that multiple contracts are to be read together (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 413 (*Harm*)); other times, courts may infer that intent by looking to "extrinsic evidence" of the circumstances enumerated in section 1642 (*ibid*; *Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225, 230; *Cadigan*, at pp. 786-787 ["it [is] unnecessary for either instrument to refer to the other"]). Because the existence or nonexistence of these circumstances is generally a factual question, we review a trial court's finding that section 1642 applies for substantial evidence. (*City of Brentwood v. Department of Finance* (2020) 54 Cal.App.5th 418, 429 (*Brentwood*); *Brookwood v. Bank of America*

---

8   All further statutory references are to the Civil Code unless otherwise indicated.

9   Because it codifies the common law principle, courts have read section 1642 to apply not only to read the contract at issue in light of other "contracts," but also to read the contract at issue in light of other "instruments or writings that are not on their own contracts." (*R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1027 (*R.W.L.*))

11

(1996) 45 Cal.App.4th 1667, 1675 (*Brookwood*); *Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 815.)

Substantial evidence supports the trial court's finding that section 1642 applies such that the Arbitration Agreement must be read together with the Employment Agreement. It is undisputed that both agreements are between the same parties—namely, Cross Country Staffing (but not Cross Country Healthcare, Inc.) and each plaintiff. It is undisputed that both agreements were "made as parts of substantially one transaction"—namely, each plaintiff's hiring process. And substantial evidence supports the trial court's finding that the agreements "relat[e] to the same matters"—namely, how disputes between Cross Country Staffing and each signatory employee are to be resolved: The Arbitration Agreement sets up arbitration as the default mechanism, and the Employment Agreement defines an alternative mechanism for disputes falling within its ambit and—through its supersession clause—declares that alternative mechanism to be controlling as to those disputes. (Accord, *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 970 (*McCaskey*) [invoking section 1642 to read one contract as creating an exception to another contract]; *Brookwood, supra*, 45 Cal.App.4th at pp. 1675-1676 [invoking section 1642 to read one contract's arbitration clause as applicable to disputes arising out of a second contract].)

The recent decision in *Alberto, supra*, 91 Cal.App.5th 482, is directly on point. In that case, the plaintiff signed two contracts as part of the hiring process—namely, (1) an arbitration agreement, and (2) a confidentiality agreement. The arbitration agreement specified that "[a]ny and all claims or controversies arising out of [the employee's] employment" would "be resolved

12

through final and binding arbitration." (*Alberto,* at p. 486.)  The confidentiality agreement obligated the employee to keep secret the employer's "trade secrets," to "acknowledge" that unauthorized disclosure "would cause irreparable injury" to the employer, and to "consent to the order of an immediate injunction, without bond, from any court of competent jurisdiction." (*Id.* at p. 487.)  Invoking section 1642, the appellate court in *Alberto* had "no difficulty concluding" that the two agreements "should be read together" because "both [were] separate aspects of a single primary transaction—[the employee's] hiring" and "both governed, ultimately, the same issue—how to resolve disputes arising between [the employee] and [the employer] arising from . . . employment." (*Id.* at pp. 490-491.)  "Failing to read them together," the court in *Alberto* continued, "artificially segments the parties' contractual relationship" and "fails to account for the overall dispute resolution process the parties agreed upon." (*Id.* at p. 491.)

Cross Country Staffing resists the application of section 1642 with what boils down to four groups of arguments.[10]

**10** For the first time at oral argument, Cross Country Staffing argued that the FAA preempts section 1642 under its decision in *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440 (*Buckeye*).  This argument is waived because it was raised for the first time at oral argument. (*People v. Crow* (1993) 6 Cal.4th 952, 960, fn. 7.)  It also lacks merit because *Buckeye*'s specific holding has nothing to do with reading one agreement in light of another, and because FAA preemption is designed to place arbitration agreements on *equal* footing with other contracts—not, as Cross Country Staffing urges, to put them on *better* footing by exempting them from the ordinary application of section 1642. (*Hofer v. Boladian* (2025) 111 Cal.App.5th 1, 11-12 [the FAA's policy "favoring arbitration was not meant to put arbitration

13

First, and as a threshold matter, Cross Country Staffing seeks to sidestep substantial evidence review by asserting that the trial court *misconstrued* section 1642 by refusing to consider the parties' intent, and that this alleged misconstruction presents a question of law we must review de novo. For support, Cross Country Staffing (1) cites the trial court's comment at the motion hearing that the *Alberto* case "didn't go into the minds of the people. It just said the[ agreements at issue] were executed at the same time . . . ," and (2) observes that the trial court's order does not explicitly discuss the parties' intent. We reject Cross Country Staffing's gloss on the trial court's reasoning. Even if we assume that the court's reference to *Alberto* was an endorsement of the principle that it is inappropriate to "go into the minds of the people," that endorsement is correct: In construing a contract, what matters is the parties' mutual intent as manifested in the contract's language as well as the objective circumstances surrounding the contract's execution (§§ 1636, 1647; *State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195; *Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1378; *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470); "uncommunicated subjective intent"—that is, what is in a contracting party's mind—"is irrelevant" (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579). Moreover, the trial court's failure to expressly refer to intent in its order does not mean it failed to consider the parties' intent given that the court did expressly discuss the factors in section 1642 as well as the language in both

contracts on *better* footing than other contracts, but rather to guarantee that arbitration contracts were put on 'equal footing' with other contracts"].)

14

agreements, which are implicit or explicit manifestations of the parties' intent.

Second, Cross Country Staffing offers three reasons why, in its view, the trial court incorrectly applied section 1642 in this case. For starters, it asserts that section 1642 permits a court to read two instruments together only if those instruments (1) explicitly cross-reference one another or (2) necessarily depend upon one another. But such a limit is neither stated nor implied by section 1642's text; to the contrary, courts have found "'joint consideration of several instruments'" to be appropriate whenever "'it appears from extrinsic evidence that they were executed as a part of one transaction'"—whether necessary or not. (*Holguin*, *supra*, 229 Cal.App.4th at p. 1320.) Next, Cross Country Staffing asserts that section 1642 cannot apply because the Arbitration Agreement and the Employment Agreement are not supported by the same consideration. But section 1642's application turns on whether the contracts to be read together are between the same *parties*, made as part of the same (overall) *transaction*, and relate to the same *matters*; the same *consideration* is not required. Indeed, reading section 1642 to require contracts to have the same consideration would mean that they are really a singular contract for which section 1642 is of no utility. Cross Country Staffing further disputes the trial court's finding that the Arbitration Agreement and the Employment Agreement relate to the same matter, asserting that the former "sets forth a dispute resolution mechanism" while the latter "covers a wide range of subjects and broadly 'define[s] the duties and responsibilities' of [plaintiffs] and Cross Country [Staffing] to each other relating to [plaintiffs'] employment." But section 1642 applies as long as "[t]he general subject matter" is the same, "even though the

15

subject matter specifically described in each instrument may differ." (*Harm*, *supra*, 181 Cal.App.2d at p. 415; *Holguin*, at p. 1321 [two instruments are "interrelated" even if they have "slightly different (though overlapping) areas of concern"].) Here, the Arbitration Agreement defines arbitration as the default dispute resolution mechanism and the Employment Agreement, while broadly defining an employee's duties and responsibilities, goes on to define an exception to arbitration as the default dispute resolution mechanism for an employee's breaches of those duties; thus, both agreements address "[t]he general subject matter" of the mechanism to be used in resolving disputes between Cross Country Staffing and its employees. (*Harm*, at p. 415; see *Alberto*, *supra*, 91 Cal.App.5th at pp. 490-491 [holding the same].)

Third, Cross Country Staffing contends that the trial court's application of section 1642 "essentially treated" the Arbitration Agreement and the Employment Agreement "as one, single contract" without the agreements meeting the "clear and unequivocal" standard necessary for such incorporation. (*R.W.L.*, *supra*, 17 Cal.App.5th at pp. 1027-1028; *Brentwood*, *supra*, 54 Cal.App.5th at p. 434.) Because "[c]onstruing different instruments together pursuant to . . . section 1642 is not the same thing as incorporating them into one instrument" (*Alberto*, *supra*, 91 Cal.App.5th at p. 491; accord, *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 759 [construing contracts together "'does not [mean] that for all purposes they constitute one contract'"]), Cross Country Staffing's characterization of the trial court's ruling is inaccurate.

Fourth and lastly, Cross Country Staffing asserts that the Arbitration Agreement and the Employment Agreement cannot

16

be read together because they simultaneously "talk past each other" and "contradict each other." We reject these assertions. The two agreements do not "talk past each other" because the Employment Agreement explicitly provides that it "supersedes all prior and contemporaneous agreements," which logically includes the contemporaneously executed Arbitration Agreement. And while they "contradict each other" insofar as the Arbitration Agreement dictates that all disputes are resolved in arbitration while the Employment Agreement allows for the resolution of some disputes in court, that contradiction is resolved by the Employment Agreement's supersession clause, which gives priority to its terms over the Arbitration Agreement's. To put it plainly, exceptions *always* contradict the general rule; that's why they are exceptions. (*McCaskey*, *supra*, 189 Cal.App.4th at p. 970 [resolving conflict between two contracts by reading one as an exception to the other].) We reject Cross Country Staffing's related argument that the existence of an integration clause in the Employment Agreement precludes reading the two agreements in tandem: Although the inclusion of an integration clause weighs against reading contracts together (*Ahern*, *supra*, 74 Cal.App.5th at p. 694), it does not preclude application of section 1642 (*R.W.L.*, *supra*, 17 Cal.App.5th at p. 1031; *Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1826, fn. 11). Where the contract being construed (here, the Arbitration Agreement) is not the one containing the integration clause and hence not the contract purporting to embody the sum total of the parties' agreement, substantial evidence supports the trial court's decision to read the Arbitration Agreement in conjunction with the Employment Agreement. (Cf. *Subaru of America, Inc. v. Putnam Automotive,*

*Inc.* (2021) 60 Cal.App.5th 829, 841 (*Subaru*) [section 1642 should not be applied where the contracts explicitly state that the two contracts should be treated as "separate"].)

## II. Determination that the Arbitration Agreement, When Construed Together with the Employment Agreement, Is Unconscionable

"California law strongly favors arbitration" and, like the FAA, "establishes 'a presumption in favor of arbitrability.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*); *Ramirez*, *supra*, 16 Cal.5th at p. 492.) Even so, an agreement to arbitrate may be unenforceable if the party opposing arbitration establishes a generally applicable contract defense. (9 U.S.C. § 2; Code Civ. Proc., § 1281; *OTO*, at p. 125.) Unconscionability is one such defense. (*Ramirez*, at p. 492; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*) ["unconscionability . . . is . . . a valid reason for refusing to enforce an arbitration agreement"]; *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687.)

"Unconscionability has both a procedural and a substantive element." (*Ramirez*, *supra*, 16 Cal.5th at p. 492.) "Procedural unconscionability 'addresses the circumstances of contract negotiation and formation,'" and focuses on questions of oppression (including whether the contract is a contract of adhesion) and surprise. (*Ibid.*; *OTO*, *supra*, 8 Cal.5th at p. 125.) "Substantive unconscionability examines the fairness of a contract's terms." (*OTO*, at p. 129.) A contract's terms are unfair if they are "overly harsh," "unduly oppressive," "unfairly one-sided," or "so one-sided 'as to shock the conscience.'" (*Ramirez*, at pp. 494-495; *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244; *Pinnacle Museum Tower Assn. v. Pinnacle Market*

18

*Development (US), LLC* (2012) 55 Cal.4th 223, 246.)  As these various formulations imply, lack of parity alone does not render a contract substantively unconscionable; it is only when the contract's "one-sided-ness" falls outside of the """margin of safety"""—when the imbalance is not shown to have a "reasonable justification" "based on 'business realities'"—that the contract crosses the line into substantive unconscionability.  (*Armendariz*, *supra*, 24 Cal.4th at pp. 117-118; *Ramirez*, at p. 495; *Lange*, *supra*, 46 Cal.App.5th at p. 450; *OTO*, at p. 130; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1536 (*Stirlen*).)  While the doctrine will apply only if a contract is shown to be both procedurally and substantively unconscionable (*Armendariz*, at p. 114), they operate on a "sliding scale":  The more of one is shown, the less of the other is required.  (*Ramirez*, at p. 493; *OTO*, at pp. 125-126.)  Where the facts underlying a determination of unconscionability are uncontroverted, our review is de novo, but where the facts are in dispute, we review the trial court's resolution of those disputes for substantial evidence.  (*Ramirez*, at p. 493.)

Because Cross Country Staffing did not dispute in the trial court and does not dispute on appeal that the adhesive Arbitration Agreement has at least a low degree of procedural unconscionability (*Armendariz*, *supra*, 24 Cal.4th at p. 113 [defining a contract of adhesion]),[11] we may affirm only if the

_____

[11]     Plaintiffs argue that there is a greater level of procedural unconscionability because Cross Country Staffing's creation of exceptions to the Arbitration Agreement in the separate Employment Agreement was a sly maneuver that constitutes "surprise." (*Armendariz*, at p. 114.)  In light of our conclusion that the Arbitration Agreement is unenforceable even with a low

19

Arbitration Agreement—when construed together with the Employment Agreement—contains notable substantive unconscionability. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915 [where adhesion contract supports some degree of procedural unconscionability, court should "'scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided'"].) It does, as we independently conclude that the two agreements create a sufficiently and unjustifiably one-sided framework favoring Cross Country Staffing. (See *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919, 931 [where section 1642 applies, court must "interpret the interplay between the [two] agreements" in evaluating substantive unconscionability].)

The first feature of unconscionability is the imbalance between which claims Cross Country Staffing must arbitrate and which claims its employees must arbitrate. (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1281 ["'mutuality'" is the "'paramount consideration'" in assessing substantive unconscionability].) It is well settled that an arbitration agreement "'is unfairly one-sided [if] it compels arbitration of the claims more likely to be brought by an employee, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by an employer, the stronger party.'" (*Ramirez, supra*, 16 Cal.5th at p. 497; *Armendariz, supra*, 24 Cal.4th at p. 117; *Carbajal, supra*, 245 Cal.App.4th at p. 248; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 85-87 (*Carmona*); *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147-1148; *Fitz*

degree of procedural unconscionability, we need not consider plaintiffs' argument that it is of a higher degree.

*v. NCR Corp.* (2004) 118 Cal.App.4th 702, 725 (*Fitz*); *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 175-177 (*Mercuro*); cf. *Lara v. Onsite Health, Inc.* (N.D.Cal. 2012) 896 F. Supp. 2d 831, 842 (*Lara*) [no unconscionability when both sides may seek injunctive relief in judicial forum].)  The Arbitration Agreement, when read in conjunction with the Employment Agreement, suffers from this flaw because it obligates Cross Country Staffing's employees to arbitrate the claims more likely to be brought by them (that is, violations of employment and labor law), but exempts from arbitration the claims more likely to be brought by the employer (that is, actions to enforce the confidentiality, non-compete and non-solicitation covenants). What is more, the agreements set up nonmutual attorney fees provisions, with Cross Country Staffing enjoying full access to "costs, expenses, and reasonable attorney fees" in court for its claims under the Employment Agreement, while the employee plaintiffs generally must bear their own costs and fees under the Arbitration Agreement.  Contrary to Cross Country Staffing's argument that the attorney fee provision in the Employment Agreement would eventually be construed as reciprocal in litigation (see § 1717), it is still unconscionable as written (*Carmona*, at p. 88; *Bakersfield College v. California Community College Athletic Assn.* (2019) 41 Cal.App.5th 753, 767).

Even if we assume that "business realities" might justify giving an employer access to the courts to seek injunctive relief, the framework here far exceeds that potential justification by granting Cross Country Staffing access to the courts in pursuit of its claims for *any* type of relief.  (Accord, *Mercuro, supra,* 96 Cal.App.4th at pp. 177-178 [rejecting "business realities" defense to similar arbitration provision]; *Carmona, supra,* 226

21

Cal.App.4th at p. 87; *Fitz, supra,* 118 Cal.App.4th at pp. 725-726; *Stirlen, supra,* 51 Cal.App.4th at pp. 1536-1537.) Cross Country Staffing argues that this imbalance does not render the Arbitration Agreement unconscionable because there are still *some* claims that it might bring that fall outside the scope of the Employment Agreement (and hence would be arbitrated rather than litigated in court) and because all of the cases we cite involve imbalances set forth in a single, unitary contract. Our Supreme Court in *Ramirez* rejected Cross Country Staffing's first argument when it held that the focus of the unconscionability inquiry is whether the "[a]greement, as a whole, tends to exempt claims *likely to be made* by [the employer] while directing [the employee's] likely claims into arbitration"; the "remote possibility" that an employer may still have to arbitrate some claims does not negate the unconscionability. (*Ramirez, supra,* 16 Cal.5th at p. 498, italics added.) And we have already rejected Cross Country Staffing's second argument, which is simply a collateral attack on our conclusion that, under section 1642, it is appropriate to consider the Arbitration Agreement and the Employment Agreement together.

The second feature of unconscionability is the employee's contractually mandated concessions in the Employment Agreement (without similar concessions in the employees' favor) that the confidentiality, non-compete and non-solicitation covenants are lawful, that any breach of those covenants "will cause irreparable harm" to Cross Country Staffing (thereby justifying injunctive relief), that Cross Country Staffing (but not the employee) is "entitled to temporary, preliminary and permanent injunctive relief," and that Cross Country Staffing need not post a bond to obtain any such relief. Similar terms

have been repeatedly found to be substantively unconscionable. (See *Alberto*, *supra*, 91 Cal.App.5th at pp. 492-493 [consent to immediate injunction, waiver of requirement that party show irreparable harm, and waiver of bond requirement; substantively unconscionable]; *Lange*, *supra*, 46 Cal.App.5th at p. 451 [waiver of requirement to show irreparable harm and waiver of bond requirement; substantively unconscionable]; *Carbajal*, *supra*, 245 Cal.App.4th at p. 234 [waiver of bond requirement; substantively unconscionable].) Cross Country Staffing resists this conclusion. It argues that its need to resort to a judicial forum for injunctive relief falls within the "margin of safety," but Cross Country Staffing's ostensible need is already served by Code of Civil Procedure section 1281.8, subdivision (b), which provides a party to an arbitration agreement access to seek a provisional remedy in the trial court. Cross Country Staffing accordingly has no justification for the injunctive relief provision in the Employment Agreement other than to further the unfairly one-sided framework imposed by the two agreements. What is more, even if we indulge Cross Country Staffing's ostensible need to access the judicial forum to seek injunctive relief, that need does not justify contractually requiring the employee to consent to the entry of an injunction, without a bond, once in that forum. Cross Country Staffing argues that the Employment Agreement only obligates its employees to "agree" to injunctive relief rather than "consent" to it as in *Alberto*, at p. 493; in the context of the agreement, these terms are synonymous. Cross Country Staffing argues that a waiver of the bond requirement is "minimally unconscionable" and is valid in federal courts, but here the employee must also consent to the entry of an injunction and to irreparable harm. Cross Country Staffing cites many

23

unpublished federal district court cases in support of its positions, but those cases are neither binding nor on point.[12]  (See *People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3 (*Crittenden*) [California appellate courts "are not bound by decisions of the lower federal courts"].)

Because the features we have identified have significant substantive unconscionability separately and together, we need not consider whether there is further unconscionability due to the Employment Agreement's denial of an employee's right to

---

[12]  See *Steele v. American Mortg. Management Services* (E.D.Cal. Oct. 26, 2012, No. 2:12-cv-00085 WBS JFM) 2012 WL 5349511 [finding "valid reasons" for exclusion of employer's injunctive relief and unfair competition claims from arbitration]; *Correa v. Firestone Complete Auto Care & Scott Bollengier* (N.D.Cal. Nov. 25, 2013, No. C 13-03123 CW) 2013 WL 6173651 [finding "minimal" substantive unconscionability where "bulk" of employer's claims subject to arbitration]; *Boyle v. Relativity Education, LLC* (C.D.Cal. May 12, 2017, No. CV 16-9402 PA (KSx)) 2017 WL 11636425 [finding "insufficient" substantive unconscionability where subset of employer's claims subject to arbitration]; *Perry v. MLB Advanced Media, L.P.* (C.D.Cal. May 30, 2018, No. CV 18-1548 PSG (GJSx)) 2018 WL 5861307 [finding a "degree" of substantive unconscionability where arbitration agreement precluded recovery of punitive damages, but did not "shock the conscience"]; *Brown v. Quantcast Corp.* (N.D.Cal. Dec. 11, 2019, No. 19-cv-05773-EMC) 2019 WL 6727503 [finding "some" substantive unconscionability where employer's claims for breach of confidentiality agreement exempt from arbitration, but did not "permeate[]" agreement]; *Landaverde v. CarMax Auto Superstores, Inc.* (C.D.Cal. July 11, 2024, No. SACV 24-0071 JGB KESx) 2024 WL 3915099 [finding "minimal" unconscionability where employer could unilaterally modify agreement, but did not permeate agreement].)

24

disclose their salary in violation of Labor Code section 232 (as the trial court found).

## III.  Refusal to Sever Unconscionable Features and Enforce the Arbitration Agreement

Once a trial court has determined that a "contract or any clause of [a] contract" is unconscionable, the court has discretion whether to "refuse to enforce the contract," "sever any unconscionable clause," or "limit the application of any clause to avoid unconscionable results."  (§ 1670.5, subd. (a); *Ramirez, supra,* 16 Cal.5th at p. 513; *Armendariz, supra,* 24 Cal.4th at pp. 121-122.)  Although there is a "'strong legislative and judicial preference . . . to sever the offending term[(s)] and enforce the balance of the agreement'" (*Ramirez,* at p. 513), a court must first ask two questions: (1) *Can* the unconscionable term(s) be easily excised or stricken from the contract (rather than needing to "'reform'" or rewrite the contract "'by augmenting it with additional terms'") (*Ramirez,* at pp. 515-516, quoting *Armendariz,* at pp. 124-125); and, if it is possible to merely excise or strike the offending term(s), (2) *should* the court sever them or limit their application (rather than refuse to enforce the entire contract) (*Ramirez,* at pp. 516-517; *Jenkins v. Dermatology Management, LLC* (2024) 107 Cal.App.5th 633, 648)?  This second question turns on whether (a) the unconscionable term(s) "permeate[]" the whole contract, which examines how many terms are unconscionable and "whether 'the central purpose of the contract is tainted with illegality'" (*Ramirez,* at pp. 515-516, quoting *Armendariz,* at p. 124; *Jenkins,* at pp. 648-649; cf. *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 985-986 [where only one provision is unconscionable, does not permeate the contract, and can be excised, error not to sever]), and (b) whether the interests

25

of justice would be served or disserved by allowing the contract to be partly enforced, which examines whether refusing to enforce the contract as a whole will have a socially beneficial "deterrent effect" (*Ramirez*, at pp. 516-517; *Jenkins*, at pp. 648-649). We review a trial court's decision to sever, or not to sever, for an abuse of discretion. (*Ramirez*, at p. 513.)

The trial court did not abuse its discretion in refusing to enforce the Arbitration Agreement (rather than rewriting the terms of that agreement to negate the provisions of the Employment Agreement that, when the two agreements are read together, render the entire arbitration framework unconscionable). Apart from whether this reworking of the framework could be accomplished solely by striking provisions in the Arbitration Agreement, the trial court did not abuse its discretion in concluding it *should not* sever those provisions and should instead refuse to enforce the Arbitration Agreement. That is because there are, at a minimum, two invalid provisions and because, when the two agreements are construed together, the unconscionability of those provisions permeates and pervades the entire Arbitration Agreement, as they operate to shunt employees to an arbitral forum for the adjudication of the claims they are most likely to bring while preserving a judicial forum for Cross Country Staffing for the claims it is most likely to bring and, even then, puts a thumb on Cross Country Staffing's side of the scale in obtaining any and all injunctive relief in that judicial forum. It is also because refusing to save any portion of the Arbitration Agreement will serve the interests of justice. Cross Country Staffing drafted a squeaky clean Arbitration Agreement that, in its own words, is "beyond reproach," drafted the separate Employment Agreement that supersedes the Arbitration

26

Agreement in a way that skews it to unfairly and unjustifiably favor Cross Country Staffing, required its new hires to sign both agreements on a take-it-or-leave-it basis, and then filed a motion to compel arbitration based solely on the Arbitration Agreement all while keeping the Employment Agreement out of sight. By this conduct, Cross Country Staffing sought to accomplish in two steps what it could not do in one—namely, to get the benefit of an agreement to arbitrate that would be unconscionable under longstanding California law. In this circumstance, the trial court did not abuse its discretion in concluding that allowing Cross Country Staffing to get the benefit of compelling its employees into arbitration would neither deter its deplorable conduct nor otherwise serve the interests of justice. (*Fitz*, *supra*, 118 Cal.App.4th at p. 727 ["An employer will not be deterred from routinely inserting such a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter"].)

Cross Country Staffing resists this conclusion with two arguments. First, it argues that the Arbitration Agreement's invocation of the FAA mandates severance under *Buckeye*, *supra*, 546 U.S. 440 and *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63. As a general matter, we note that California's severance doctrine, because it is a generally applicable doctrine applicable to all contracts, may be applied to arbitration agreements governed by the FAA. (9 U.S.C. § 2.) More specifically, *Buckeye* and *Rent-A-Center* are inapt. *Buckeye* held that courts should sever and uphold the arbitration clause within a broader contract even if other portions of that broader contract are invalid. (*Buckeye*, at pp. 445-446.) But *Buckeye* explicitly noted that its

27

holding does not apply where, as here, "the challenge is to the arbitration clause itself." (*Ibid.*) Cross Country Staffing asserts that *Buckeye* requires us to sever the Arbitration Agreement from the Employment Agreement here, but the Arbitration Agreement is not a clause within the broader Employment Agreement; instead, and as noted above, the Arbitration Agreement is a separate contract that we are interpreting (under section 1642) in light of the separate Employment Agreement. *Buckeye* is inapt. *Rent-A-Center* held that an arbitrator may adjudicate challenges to the validity of the contract as a whole but not challenges to the arbitration clause itself—this holding has nothing whatsoever to do with severance. (*Rent-A-Center*, at pp. 70-71.)[13] Second, Cross Country Staffing argues that there is nothing to sever because the Arbitration Agreement, when read in isolation, is entirely valid. We reject this further collateral challenge to our initial holding that the Arbitration Agreement should be construed together with the Employment Agreement.[14]

_____

[13] At oral argument, Cross Country Staffing urged that severance was also mandated by *Lara*, *supra*, 896 F.Supp.2d 831 and *Subaru*, *supra*, 60 Cal.App.5th 841, but *Lara* merely held that severance was not mandated when the arbitration agreement was not "permeated with unconscionability" (*Lara*, at p. 848) and *Subaru* did not address severance.

[14] As with its similar citations regarding substantive unconscionability, Cross Country Staffing also cites various unpublished federal district court cases where courts exercised their discretion to sever unconscionable provisions, but those cases are not binding on this court (*Crittenden*, *supra*, 9 Cal.4th at p. 120, fn. 3), and they do not dictate that the trial court here abused its discretion. (See *Colvin v. NASDQ OMX Group, Inc.* (N.D.Cal. Nov. 4, 2015, No. 15-cv-02078-EMC) 2015 WL 6735292

## DISPOSITION

The order is affirmed.  Plaintiffs are entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**.


_____, P.J.

HOFFSTADT

---

[finding "two unconscionable provisions . . . may be excised without requiring the Court to reform or augment the agreement"]; *Martin v. Ricoh Americas Corp.* (N.D.Cal. June 4, 2009, No. C-08-4853 EMC) 2009 WL 1578716 [finding the "only one substantively unconscionable provision . . . is easily stricken"]; *Randazzo Enterprises, Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.* (N.D.Cal. Dec. 11, 2014, No. 5:14-CV-02374-EJD) 2014 WL 6997961 [finding the "only one substantively unconscionable provision . . . does not taint the entire agreement with illegality" and "can easily be stricken with no need to reform the agreement"]; *Arreguin v. Global Equity Lending, Inc.* (N.D.Cal. Sept. 2, 2008, No. C 07-06026 MHP) 2008 WL 4104340 [finding agreement "not so permeated by unconscionability that it cannot be cured by severance" of specific unconscionable clauses]; *Siglain v. Trader Pub. Co.* (N.D.Cal. Aug. 6, 2008, No. C 08-2108 JL) 2008 WL 3286974 [finding agreement was "in no way 'permeated' with unconscionability" and accepting employer's concession to sever one offending provision].)

29

We concur:

_____, J.
 MOOR

_____, J.
 KIM (D.)